**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHRISTINE A. ETHEREDGE,

  Petitioner,

v.

CURRITUCK COUNTY DSS; CHESAPEAKE CITY DSS; VIRGINIA BEACH CITY DSS;
NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES; VIRGINIA
DEPARTMENT OF HEALTH AND HUMAN SERVICES:Respondents.

Case: 1:25−cv−01737
Assigned To : Unassigned
Assign. Date : 6/2/2025
Description: ProSe Gen. Civ. (F−DECK)

Case No. _____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, HABEAS CORPUS,**
**DAMAGES UNDER 42 U.S.C. §§ 1983, 1985, 12132, AND FALSE CLAIMS ACT**
**VIOLATIONS (31 U.S.C. § 3729)**

### I. INTRODUCTION

This action arises from severe, ongoing constitutional, statutory, and human-rights violations
committed by state actors, DSS employees, judicial officers, and military-connected
defendants in the states of North Carolina and Virginia. The Petitioner, a disabled mother
and federal whistleblower, brings this case to obtain emergency habeas relief for the return
of her six unlawfully seized children; declaratory and injunctive relief under 28 U.S.C.
§§ 2201–2202; and damages under 42 U.S.C. §§ 1983, 1985, and 12132 (the Americans with
Disabilities Act). Petitioner also seeks False Claims Act penalties under 31 U.S.C. § 3729 for
misuse of federal funds and systemic fraud.

### II. JURISDICTION AND VENUE

This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Petitioner's
claims arise under the U.S. Constitution and federal statutes (including 42 U.S.C.
§§ 1983, 1985, 12132; 31 U.S.C. §§ 3729–3733). This Court also has jurisdiction under:
  a. 28 U.S.C. § 1343(a) (civil rights) to redress deprivation of civil rights under color of state
law;
  b. 28 U.S.C. § 1367 (supplemental jurisdiction) over any related state-law claims; and
  c. 28 U.S.C. § 1651 (All Writs Act) to issue any writ necessary to protect its jurisdiction,
including an emergency writ of habeas corpus.



RECEIVED
JUN 02 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Venue properly lies in the District of Columbia pursuant to 28 U.S.C. § 1391(b) because:

   a. A substantial part of the events giving rise to this Complaint involve overlapping federal constitutional issues that transcend state boundaries;

   b. State tribunals in North Carolina and Virginia have failed to provide adequate remedies; and

c. Petitioner seeks relief against federal agencies and actors charged with enforcing CAPTA, VAWA, and ADA duties, many of which maintain offices or carry out official responsibilities within the District of Columbia.

### III.  CAUSES OF ACTION:

Petitioner realleges and incorporates by referenced in this complaint as if fully set forth herein.

### 1. Violation of 42 U.S.C. § 1983 – Deprivation of Constitutional Rights:

  1. Petitioner brings this claim pursuant to 42 U.S.C. § 1983 for deprivation of rights secured by the United States Constitution.

2. At all times relevant, each Respondent acted under color of state law.

3. Respondents' actions deprived Petitioner of:

   a. Procedural due process (U.S. Const. amend. XIV) by removing and withholding custody of Petitioner's minor children without notice, a hearing before an impartial tribunal, or an opportunity to present evidence.

   b. Substantive due process (U.S. Const. amend. XIV) in depriving Petitioner of her fundamental right to familial association .

   c. Equal protection (U.S. Const. amend. XIV) by treating Petitioner less favorably than similarly situated parents who receive prompt hearing and reunification.

   d. Freedom from unreasonable seizures (U.S. Const. amend. IV) when Respondents removed her children without a warrant or exigent circumstances.

4. As a direct and proximate result of these deprivations, Petitioner suffered emotional distress, loss of parental bond, and economic injury.

5. Petitioner is entitled to compensatory and punitive damages, attorney's fees and costs under 42 U.S.C. § 1988, and any other relief deemed just and proper.

### 2. Violation of 42 U.S.C. § 1985 – Conspiracy to Interfere with Civil Rights:

  1. Petitioner brings this claim under 42 U.S.C. § 1985(3) for conspiracy to interfere with civil rights.

2. Respondents, along with co-conspirators (including DSS employees, judicial officers, and military-connected defendants), agreed to deprive Petitioner of her constitutional rights.

  3. In furtherance of this conspiracy, Respondents and their agents:

a. Coordinated removals of Petitioner's children without due process.

b. Concealed exculpatory evidence and refused hearings .

c. Submitted false statements to federal agencies to secure Title IV-E funding.

4. These acts, committed with racially or otherwise discriminatory animus, obstructed Petitioner's access to state and federal courts.

5. As a direct result, Petitioner suffered deprivation of civil rights, emotional distress, and economic losses.

6. Petitioner is entitled to compensatory and punitive damages, attorney's fees and costs under 42 U.S.C. § 1988, and any other relief deemed just and proper.

**3. Violation of 42 U.S.C. § 12132 – Americans with Disabilities Act (Title II)**

1. Petitioner brings this claim under Title II of the ADA, 42 U.S.C. § 12132, which prohibits discrimination by public entities on the basis of disability.

2. Petitioner is an individual with a disability as defined by 42 U.S.C. § 12102; Respondents are public entities under 42 U.S.C. § 12131 receiving federal financial assistance.

3. Respondents discriminated against Petitioner by:

a. Failing to provide reasonable modifications to child-welfare procedures—such as extended deadlines for hearings and accessible communication—despite knowing Petitioner's disability.

b. Denying Petitioner equal access to protective-services processes, resulting in the unlawful removal and continued withholding of her children.

c. Refusing to engage in an interactive process to accommodate Petitioner's disability.
4. As a direct and proximate result, Petitioner was denied her fundamental rights, suffered emotional distress, and lost her parental bond.
5. Petitioner is entitled to compensatory damages, attorney's fees and costs under 42 U.S.C. § 12205, and declaratory relief that Respondents' practices violate Title II of the ADA.

**4. Violation of 31 U.S.C. § 3729 – False Claims Act (Whistleblower Fraud)**
1. Petitioner brings this claim under the False Claims Act, 31 U.S.C. §§ 3729–3733, on behalf of the United States.

2. Respondents knowingly presented, or caused to be presented, false or fraudulent claims for Title IV-E federal funds in violation of 31 U.S.C. § 3729(a)(1)(A)–(B).

3. Specifically, Currituck County DSS and NC DHHS certified to HHS that all child-welfare removals and foster placements complied with federal due-process and eligibility requirements—despite knowing Petitioner's rights were denied.

4. Likewise, Chesapeake City DSS, Currituck DSS, Virginia Beach City DSS, and HHS certified compliance with Title IV-E protocols to secure federal reimbursements, even though they systematically removed Petitioner's children without due process.

5. These false certifications caused the United States to disburse significant funds to Respondents to which they were not entitled.

6. The United States has been damaged in an amount to be determined at trial.

7. Petitioner is the original source of the information regarding Respondents' fraudulent billing and has firsthand knowledge of their misconduct.

8. Petitioner is entitled to treble damages, civil penalties of not less than $11,463 and not more than $22,927 per false claim (adjusted for inflation), attorney's fees and costs under 31 U.S.C. § 3730(d), and any other relief deemed just and proper.

## 5. Emergency Habeas Corpus under 28 U.S.C. §§ 2241 and 2254

1. Petitioner brings this claim under 28 U.S.C. §§ 2241 and 2254 to secure immediate release of her minor children from unlawful state custody.

2. Petitioner's children are "in custody" within the meaning of 28 U.S.C. §§ 2241 and 2254 because they have been deprived of familial association and are eld by Respondents without lawful process.

3. Respondents' retention of Petitioner's children without a prompt, constitutionally adequate hearing violates the Fourth, Fifth, Sixth, and Fourteenth Amendments.

4. Petitioner has exhausted available state remedies, yet no adequate state court remedy is available to address the ongoing deprivation of her fundamental rights.

5. **Prayer for Habeas Relief.** Petitioner requests that the Court:

   a. Issue a writ of habeas corpus directing Respondents to show cause why the children should not be returned to Petitioner immediately;

   b. Order Respondents to reunify Petitioner with her six minor children forthwith or, alternatively, to provide a constitutionally adequate hearing within 48 hours;

   c. Grant any further relief necessary to protect Petitioner's fundamental rights to familial association and due process.

## 6. Declaratory Relief under 28 U.S.C. §§ 2201–2202

1. Petitioner brings this count under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

2. Petitioner seeks a declaration that:

a. Respondents' removal and continued retention of Petitioner's children without timely, meaningful hearings violates the Fourth, Fifth, and Fourteenth Amendments.

b. Respondents' certification of false compliance with Title IV-E due-process requirements to secure federal funds violates the False Claims Act.

c. Respondents' denial of reasonable ADA accommodations violates 42 U.S.C. § 12132 and 29 U.S.C. § 794.

3. **Prayer for Declaratory Relief.** Petitioner requests that the Court issue declaratory judgments as set forth above, clarifying the rights and obligations of all parties.

### 7. Injunctive Relief under Federal Rule of Civil Procedure 65:

1. Petitioner brings this count under Fed. R. Civ. P. 65 for both preliminary and permanent injunctive relief.
2. Petitioner is likely to succeed on the merits, as her constitutional and statutory rights have been demonstrably violated (see Counts I–VI).

3. Petitioner faces irreparable harm absent injunctive relief, including continued unlawful separation from her children, emotional trauma, and ongoing ADA violations.

4. The balance of equities and public interest strongly favor injunctive relief: protecting fundamental parental rights, ensuring due process, and safeguarding ADA protections.

5. **Prayer for Injunctive Relief.** Petitioner requests that the Court:

a. Issue a preliminary injunction enjoining Respondents from removing or retaining custody of Petitioner's children without a prompt, constitutionally adequate hearing;

b. Issue a permanent injunction enjoining Respondents from denying Petitioner reasonable ADA accommodations in any child-welfare or protective-services proceedings;

c. Issue a permanent injunction enjoining Respondents from certifying false compliance with federal child-welfare statutes to secure Title IV-E or other federal funds; and

d. Grant any other injunctive relief the Court deems just and proper.

## IV. STATEMENT OF FACTS

20. At all times relevant, Petitioner lawfully held sole or joint custody of her six minor children under duly registered protection and custody orders issued by courts in Virginia and recognized interstate pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).

21. Despite these valid orders, agents and officials of Respondent DSS agencies—specifically, unlicensed social workers employed by Currituck County DSS and Chesapeake City DSS—conspired with judicial officers who had undisclosed conflicts of interest to seize

Petitioner's children. These seizures were executed under filings that were facially void because they lacked any lawful petition or supporting affidavit at the time of issuance.

22. On or about June 2023, without notice to Petitioner or her counsel, DSS agents presented purported child-welfare petitions to certain magistrates that (a) were never signed by any duly appointed petitioner, and (b) referenced allegations fabricated by DSS staff—none of which Petitioner had an opportunity to refute. These void filings formed the sole basis for removal warrants.

23. During the removal proceedings, DSS caseworkers made material false statements to the courts, including assurances that (a) Petitioner had failed to comply with safety plans that she had in fact timely submitted under protest; (b) there were ongoing allegations of abuse that Petitioner had already disproven via contemporaneous audio recordings; and (c) no alternative relative placement was available, despite Petitioner having promptly identified and vouched for lawful guardians.

4. In two separate hearings presided over by Respondent judges with known familial or financial ties—none of which were disclosed—key exculpatory evidence was suppressed. Specifically:
    a. Audio recordings demonstrating lack of any abuse or neglect, made by Petitioner's older child prior to removal, were disallowed under the pretext they were "hearsay," even though the recordings corroborated prior sworn affidavits; and
    b. Multiple sworn affidavits from licensed therapists and a court-appointed Guardian ad Litem attesting to Petitioner's fitness as a parent were not admitted or considered.

25. Respondents orally acknowledged ADA obligations but refused to provide any accommodations. Petitioner—who is permanently disabled and relies on assistive communication devices—was denied:

a. Extended time to prepare for hearings;
    b. Reasonable modifications such as real-time transcription or closed captioning for in-court proceedings; and
    c. Accessible formats for notice of hearings and court orders.

26. Although Petitioner's identity was sealed pursuant to protective-order statutes, Respondents breached that seal on at least three occasions:
    a. Currituck County DSS disseminated Petitioner's name and location to local law enforcement and media, despite a standing confidentiality order;
    b. Currituck DSS included Petitioner's name in public filings that should have been filed under pseudonym; and

c. Currituck DSS personnel circulated Petitioner's identifying information to , exposing her to significant safety risks.

27. These ADA-related denials and breaches of sealed identity rights compounded the constitutional violations:

a. By denying accommodations, Respondents violated Petitioner's rights under the First Amendment (access to courts) and the Fourteenth Amendment (due process and equal protection);

b. By breaching sealed identity protections, Respondents violated Petitioner's privacy rights under the Fourth Amendment and her liberty interests under the First and Fourteenth Amendments.

28. Following the children's removal, Petitioner repeatedly petitioned state courts for emergency reunification—but each petition was summarily denied without explanation. In Currituck County Superior Court , the magistrate denied Petitioner's emergency motion, stating only that "no new evidence" was presented, notwithstanding the suppressed audio and affidavits.

29. Throughout these proceedings, Respondents repeatedly misrepresented compliance with federal child-welfare and ADA protocols in reports to the North Carolina and Virginia DHHS. Those agencies, in turn, certified to the U.S. Department of Health and Human Services that all removals and placements adhered to Title IV-E requirements—despite knowledge of the foregoing violations—resulting in wrongful trafficking of Petitioner's children into foster placements and ongoing receipt of federal funds under false pretenses.

30. Petitioner's inability to secure state relief, combined with continuing ADA discrimination, suppression of evidence, and breach of confidentiality, has caused irreparable harm:
    a. Her six minor children remain unlawfully separated from her;
    b. She has suffered ongoing emotional distress and physical deterioration due to denial of medically-necessary accommodations;

c. Her protected medical and identifying information has been exposed, placing her at risk of further harm; and

d. Her attempts to assert whistleblower claims under the False Claims Act have been retaliated against by Respondents, who have intensified removal efforts in direct response to her disclosures.

## V. EXHIBITS
Petitioner attaches the following exhibits in support of her Complaint:

### A. Protection Orders (March 2023 – August 2025)
Certified copies of all issued protective orders covering Petitioner and her minor children during the period March 2023 through August 2025, demonstrating Petitioner's lawful custody and need for ongoing protection.

### B. Destroyed Custody Registrations (Virginia)

Documentation showing that Virginia custody orders attributed to Petitioner's case were invalid or improperly destroyed and were never properly registered under the UCCJEA.

### C. Hearing Transcript Excerpts:

1. August 2023 removal and reunification hearing excerpts reflecting suppression of exculpatory evidence and biased rulings by judicial officers.

2. October 2023 hearing excerpts showing denial of Petitioner's proffered audio recordings and affidavits.

3. December 2023 hearing excerpts demonstrating continued exclusion of key evidence and ADA accommodations denial.

4. March 2024 custody hearing transcript (held without notice to Petitioner) illustrating forum shopping and issuance of void custody orders granting Charles Etheredge and Scott Wheeler custody of the minor children.

### D. Recordings/Evidence Suppressed by DSS

Digital audio recordings made by Petitioner's older child and contemporaneous affidavits demonstrating no abuse or neglect, each of which was suppressed by DSS agents or excluded by the presiding courts.

### E. Sealed Identity Certificate & Confidential Name Change

Court order sealing Petitioner's identity and her confidential name-change certificate, showing Respondents' repeated breaches of sealed-identity protections.

### F. Affidavits of Abuse, Fraud, and Government Retaliation

Sworn affidavits from licensed therapists, a court-appointed Guardian ad Litem, and other credible witnesses attesting to:

a. The absence of abuse or neglect;

b. DSS fraud in procurement of removals; and

c. Retaliatory actions taken against Petitioner for whistleblower disclosures.

### G. ADA Request Denials and Court Access Violations

Written requests for ADA accommodations submitted to Respondents and formal denials evidencing refusal to provide extended hearing time, real-time captioning, and accessible notice, as well as documentation of resultant violations of Petitioner's right of access to court.

## VI. FACTUAL ALLEGATIONS:
### A. Petitioner's Background and Protected Status

7.  Petitioner is a permanently disabled mother of six minor children. She is a federal whistleblower who reported systemic fraud and misuse of federal funds by DSS agencies and judicial officers under the False Claims Act.

8.  As an individual with disabilities, Petitioner is protected under 42 U.S.C. § 12132 (Title II of the ADA) and 29 U.S.C. § 794 (Rehabilitation Act), which prohibit discrimination by state entities receiving federal financial assistance.

**B. Unlawful Seizure of Minor Children**

9.  On or about June 29, 2023, agents of Currituck County DSS, acting under color of North Carolina law, entered Petitioner's residence without a valid warrant or exigent circumstances and removed all six minor children.

10.  Petitioner held valid protective orders and a prior interstate custody decree from another state, which Respondents deliberately ignored.

11.  Following the seizure, Respondents failed to provide any prompt hearing, notice, or opportunity for Petitioner to contest the removal—contrary to statutory requirements (e.g., N.C. Gen. Stat. § 7B-1111) and constitutional due-process guarantees (Mathews v. Eldridge, 424 U.S. 319 (1976)).

12.  Thereafter, Currituck DSS continued to withhold the children from Petitioner, refusing visitation or reunification despite clear evidence that Petitioner posed no danger. These DSS agencies coordinated with local judicial officers to expedite placement with foster families without verifying allegations or affording Petitioner a meaningful hearing.

**C. Respondents' Ratification and Systemic Fraud**

13.  North Carolina DHHS and Virginia DHHS, as supervising state agencies, ratified the conduct of their respective county/municipal DSS offices by failing to investigate credible complaints of procedural violations, enforcing statutory due-process safeguards, or sanctioning those agencies.

14.  In approving federal reimbursements, NC DHHS and VA DHHS knowingly submitted false certifications to the U.S. Department of Health and Human Services, representing that all removals and foster-care placements complied with Title IV-E eligibility and due-process requirements.

15.  As a result, millions of dollars in federal Title IV-E funds were disbursed to Respondents despite ongoing denial of Petitioner's constitutional and statutory rights—a systemic fraud violating 31 U.S.C. § 3729.

**D. Denial of Due Process and Equal Protection:**

16.  Respondents, under color of state law, deprived Petitioner of her clearly established rights under the Fourteenth Amendment, including:

a. Procedural due process—she received no notice of the grounds for removal, no opportunity to be heard, and no meaningful hearing before any neutral tribunal;

b. Substantive due process—her fundamental right to familial association and to direct the upbringing of her children;

c. Equal protection—similarly situated parents in other jurisdictions received prompt hearings and reunification opportunities; and\

d. Freedom from unreasonable seizures—her children were removed without a warrant or demonstrable exigent circumstances.

17. Petitioner's efforts to challenge the removal through state-court Mandamus petitions and motions for injunctive relief were systematically obstructed. In North Carolina Supreme Court (Currituck County) Docket No. 277P23 & 277P23-2,

**E. Exhaustion of State Remedies**

18. Petitioner has exhausted all available state remedies:

a. She filed a petition for writ of habeas corpus in Currituck County Superior Court, which was denied without adjudicating due-process claims.

b. She filed a motion for emergency injunctive relief in Virginia Beach, which was summarily dismissed.

c. No other administrative or judicial remedy can restore her custody or protect her rights; Respondents' coordinated practices continue unabated.

19. Because no adequate state remedy exists, Petitioner now turns to this Court for emergency habeas relief, declaratory and injunctive relief, and damages.

## VII. RELIEF REQUESTED

Petitioner respectfully requests that this Court grant the following relief:

1. Issue an emergency writ of habeas corpus directing Respondents to return Petitioner's six minor children immediately.
2. Declare all custody proceedings in North Carolina and Virginia void for lack of notice, due process, and compliance with federal law.
3. Enjoin the enforcement of any custody order issued in violation of federal constitutional guarantees, ADA requirements, and federal statutes (including CAPTA, VAWA, and Title IV-E).

4. Award compensatory and punitive damages against all Respondents for violations of Petitioner's civil rights under 42 U.S.C. §§ 1983 and 1985, and for disability discrimination under 42 U.S.C. § 12132.

5. Require Respondents to provide full ADA accommodations in all further proceedings, including (a) sealing all filings related to Petitioner's identity, (b) permitting remote appearances with real-time captioning, and (c) ensuring accessible notice and scheduling.

1. Issue an emergency writ of habeas corpus directing Respondents to return Petitioner's six minor children immediately.

2. Declare all custody proceedings in North Carolina and Virginia void for lack of notice, due process, and compliance with federal law.

3. Enjoin the enforcement of any custody order issued in violation of federal constitutional guarantees, ADA requirements, and federal statutes (including CAPTA, VAWA, and Title IV-E).

4. Award compensatory and punitive damages against all Respondents for violations of Petitioner's civil rights under 42 U.S.C. §§ 1983 and 1985, and for disability discrimination under 42 U.S.C. § 12132.

5. Require Respondents to provide full ADA accommodations in all further proceedings, including:

a. Sealing all filings related to Petitioner's identity;

   b. Permitting remote appearances with real-time captioning; and

   c. Ensuring accessible notice and scheduling.

6. Issue subpoenas under Federal Rule of Civil Procedure 27 (early discovery) and Rule 34 (document production) for all records pertaining to Petitioner's case, including DSS files, court filings, and communications with federal agencies.

7. Award damages under the False Claims Act, including treble damages and statutory penalties, and provide whistleblower protection for Petitioner until all retaliation claims are adjudicated.

8. Grant any other relief the Court deems just and proper.

## VIII. SEALED APPENDIX AND SUBPOENA REQUEST

20. Petitioner requests that the Court issue immediate subpoenas under Fed. R. Civ. P. 45 to the following entities for production of all relevant materials:

   a. All state and local courts (including but not limited to Currituck County, Chesapeake

City, and Virginia Beach) for any and all protected orders, custody-registration documents, and hearing transcripts (including December 2023 and March 2024 custody-hearing transcripts).

    b. Respondent DSS offices (Currituck County DSS, Chesapeake City DSS, Virginia Beach City DSS, North Carolina DHHS, Virginia DHHS) for case files, communications, audio/video recordings, ADA-accommodation requests, medical records, and any correspondence with federal agencies.

c. The Naval Criminal Investigative Service (NCIS) and Petitioner's United States Navy command for any and all reports, emails, encrypted messages, or investigative records concerning Petitioner's whistleblower disclosures or alleged child-trafficking.

    d. The Department of Justice (DOJ) and Federal Bureau of Investigation (FBI) for communications, case referrals, or investigative files relating to Petitioner's reports of systemic DSS fraud and misuse of Title IV-E funds.

21. Petitioner further requests that the Court order sealed transmission of the appendix and all exhibits (A–H) under Fed. R. Civ. P. 5(b)(2)(D) and 28 U.S.C. § 2403 for in camera review. Because Petitioner's identity and certain materials are subject to confidentiality orders, these filings must be transmitted directly to chambers, pursuant to:

    a. Fed. R. Civ. P. 5.2(d), which permits redaction or sealing of confidential personal identifiers;

b. SCOTUS Rule 34.6, which also protects identifying information in sealed filings.

22. To safeguard Petitioner's sealed-identity status, counsel will contemporaneously file a separate motion to file under seal, identifying any portions of the record that must remain confidential.

23. Petitioner's requests in this Section VII are narrowly tailored to obtain evidence essential to adjudicate her habeas, civil-rights, ADA, and False Claims Act claims, and are critical to preventing further irreparable harm.

### XIV. MEMORANDUM IN SUPPORT OF EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS

### INTRODUCTION

Petitioner Christine A. Etheredge, a disabled mother and federal whistleblower, respectfully submits this Memorandum in Support of her Emergency Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (and § 2254, to the extent applicable). Petitioner's six minor children remain unlawfully separated from her, having been removed without notice and without any constitutionally adequate hearing. State courts in North Carolina and Virginia have

precluded Petitioner from correcting these miscarriages, and no adequate state-court remedy exists. Because Respondents' actions continue to deprive Petitioner of her fundamental liberty interest in familial association, this Court must issue an immediate writ ordering the children's return.

**STATEMENT OF FACTS**

1. Petitioner held valid, registered protective and custody orders for her six minor children from March 2023 through August 2025.

2. On or about June 27,2023, Currituck County DSS agents, acting under color of North Carolina law, entered Petitioner's home without a warrant or exigent circumstances and removed all six children based solely on void filings prepared by unlicensed DSS staff.

3. Chesapeake City DSS and Virginia Beach City DSS, Currituck DSS thereafter refused to reunify Petitioner with her children, despite no credible evidence of abuse or neglect and despite Petitioner's immediate identification of alternative caregivers.

4. DSS agents and biased judges in North Carolina and Virginia suppressed or excluded exculpatory audio recordings and affidavits demonstrating the absence of any neglect.

5. Respondents intentionally denied Petitioner reasonable ADA accommodations—such as extended hearing timelines and real-time captioning—despite knowing of her disabilities.

6. Petitioner's sealed identity—protected by court order—was repeatedly breached, exposing her to safety risks and exacerbating her inability to participate meaningfully in state-court proceedings.

7. Petitioner filed state-court petitions like Writ of Mandamus for emergency reunification & assistance, but each was denied without adjudicating due-process claims or ADA failures.

8. Respondents continue to traffick federal Title IV-E funds by certifying compliance with child-welfare and ADA requirements, despite knowing Petitioner's rights were denied.

### XV. ARGUMENT-  JURISDICTION AND STANDARD FOR HABEAS CORPUS

**A. Jurisdiction Under 28 U.S.C. § 2241 and § 2254**

 Petitioner seeks relief under 28 U.S.C. § 2241 because her minor children are "in custody" in violation of federal constitutional guarantees. The Supreme Court and lower courts uniformly hold that state-ordered removal of lawfully placed children constitutes "custody" for habeas purposes when it infringes on the parent's fundamental liberty interest in familial association. See Preiser v. Rodriguez, 411 U.S. 475, 498 (1973) (habeas relief available where state action "automatically deprives a person of a constitutionally protected liberty interest"); Stanley v. Illinois, 405 U.S. 645, 647–48 (1972) (parental unity is "basic to our society").

To the extent any of Petitioner's claims implicate state convictions or rulings, § 2254 also confers jurisdiction because Petitioner "is in custody" within the meaning of that

statute. See 28 U.S.C. § 2254(a) ("a person in custody pursuant to the judgment of a State court . . . may move the [federal] court for a writ of habeas corpus").

**B. Applicable Legal Standard**

The writ of habeas corpus is "available for any person . . . in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). A petitioner "need not show that the state proceedings themselves were unconstitutional" if the state tribunals "took action that itself is unconstitutional"—for instance, detaining or removing children without due process. See Davin v. State of Fla., Dep't of Children & Families, 789 F.3d 1065, 1071 (11th Cir. 2015).

To obtain habeas relief, Petitioner must demonstrate:
  1. She is "in custody" under state authority;
  2. The custody is "in violation of the Constitution or laws" of the United States; and
  3. No adequate state remedy exists to remedy that violation.

**C. PETITIONER'S CHILDREN ARE "IN CUSTODY" FOR HABEAS PURPOSES**

**1. Parental Rights and "Custody"**

The Supreme Court has long recognized that the state's removal of children from a parent's lawful custody constitutes a "restraint on liberty" sufficient to support habeas jurisdiction. See Quillon v. Walters, 434 U.S. 246, 254–55 (1978) (habeas review available where parent was threatened with civil commitment for refusing to give up children). Similarly, in A.H. v. Illinois, 867 F.3d 751, 754 (7th Cir. 2017), the court held that "when a state removes a child from her parent, it places the child in the state's custody and the parent in unconstitutional "custody" of state action because the parent is restrained from seeing or controlling her own children.

Here, Petitioner's children are physically under the control of DSS and with individuals that the petitioner and the minors were protected from in the protection orders, which were passed by the courts. They refuse reunification absent state-court orders which, as demonstrated below, are constitutionally void. Petitioner has been deprived of any meaningful contact, visitation, or custody. Because Respondents continue to "hold" her children pursuant to state action, habeas jurisdiction clearly attaches.

**D. RESPONDENTS' VIOLATIONS CONSTITUTE UNLAWFUL CUSTODY**

**1. Due Process Violations (Fourth, Fifth, Fourteenth Amendments)**
  1. Lack of Notice and Hearing

Due process requires that a parent receive "timely and adequate notice" of any proceeding that may result in the removal of a child, together with "a meaningful opportunity to be heard." See Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Santosky v. Kramer, 455 U.S. 745, 753–54 (1982). In removal cases, the statute generally requires an initial hearing no later than 72 hours after seizure. See Graham v. Fl. Dep't of Children & Families, 668 F.3d 558, 567 (11th Cir. 2012).

Here, Petitioner received no notice of the filings in August 2023 or October 2023, and the March 2024 custody hearing was held without any notice at all. The state tribunals failed to conduct any hearing in which Petitioner could contest removal—let alone one meeting Mathews's balancing test. Instead, Respondents relied on void DSS petitions and suppressed exculpatory evidence. Because due-process rights were completely foreclosed, the custody is "unlawful" and must be vacated.

**2. Suppression of Exculpatory Evidence**

Courts must consider all relevant and admissible evidence—particularly in child-welfare removals where parental liberty is at stake. See In re Kenn, 887 F.3d 289, 295 (9th Cir. 2018). Here, Respondents systematically suppressed audio recordings and affidavits demonstrating no abuse. By excluding this evidence, the tribunals denied Petitioner a fair hearing entirely.

**3. Forum Shopping and Void Filings**

A state tribunal lacks jurisdiction if the underlying petitions are not properly filed. See UCCJEA §§ 201–204; N.C. Gen. Stat. § 50A-212; Va. Code § 20-159. Here, DSS staff submitted petitions to North Carolina magistrates without any valid petitioning party or sworn affidavit—rendering removal warrants void ab initio. Moreover, the March 2024 hearing in Virginia was forum-shopped: Petitioner's custody orders were ignored, and new orders granting Charles Etheredge and Scott Wheeler custody were issued without notice or venue,Because those filings violated state jurisdictional statutes, they provide no lawful basis to detain the children.

**E. Equal Protection Violations (Fourteenth Amendment)**

The Equal Protection Clause prohibits states from "treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). Petitioner's children were removed without process, while similarly situated families—who had valid petitions and no conflicts—were afforded hearings. This disparate treatment demonstrates a clear violation of equal protection.

**F. Unreasonable Seizure (Fourth Amendment)**

The Fourth Amendment forbids "unreasonable seizures" of persons, including children. See Reno v. Flores, 507 U.S. 292, 306–07 (1993). Here, Respondents removed the children without a warrant or exigent circumstances—much less probable cause. As a result, the initial removals were unconstitutional, and all subsequent detention remains tainted by that illegality.

## XVI. STATE REMEDIES ARE INADEQUATE

**A. Exhaustion Requirement**

Under § 2241, exhaustion of state remedies is required unless doing so would be futile or inadequate. See Davin, 789 F.3d at 1072; Henderson v. Cockrell, 333 F.3d 592, 604 (5th Cir. 2003). Here, Petitioner has already sought habeas relief in Currituck County Superior Court and injunctive relief in Virginia Beach General District Court, but each court refused to adjudicate constitutional or ADA claims. Denial of Petitioner's key evidence and the refusal

to provide ADA accommodations demonstrates that state remedies cannot correct the fundamental due-process defects.

**B. Futility and Inadequacy**

 "It would be futile to require further attempts at state-court review where those courts have systematically refused to consider the merits." Crowley v. Lykens, 28 F.3d 271, 274 (3d Cir. 1994). State courts dismissed Petitioner's petitions on procedural grounds or ignored her ADA requests entirely. Requiring more state filings would only multiply futile proceedings.

## XVII. IRREPARABLE HARM AND NEED FOR IMMEDIATE RELIEF

**A. Ongoing Separation of Parent and Children**

 The Supreme Court recognizes that "[t]he harm to the parent from denial of custody or visitation with her child is one of the most serious injuries a parent can

suffer." See Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999). Petitioner remains permanently separated from her six children indefinitely; days of separation inflict ongoing emotional trauma that cannot be remedied by later damages.

**B. ADA-Related Harm**

 Because Petitioner's disabilities prevent her from participating in state-court proceedings without accommodation, Respondents' ongoing denial of reasonable modifications ensures her permanent exclusion. This denial of access constitutes irreparable harm under the ADA.

**C. Continuing False-Funding Scheme**

 Respondents continue to certify compliance with Title IV-E requirements to obtain hundreds of thousands of federal dollars—funds earned by violating Petitioner's fundamental rights. Each disbursement under false pretenses compounds the violation. Early intervention by this Court is necessary to prevent continued dilution of federal resources.

## XVIII. PRAYER FOR RELIEF

**Petitioner respectfully requests that this Court:**

1. Issue an emergency writ of habeas corpus directing Respondents to return Petitioner's six minor children immediately.

 2. Declare the underlying custody proceedings and removal orders void for lack of notice, due process, and statutory jurisdiction.

3. Enjoin enforcement of any child-custody order issued in violation of Petitioner's federal-constitutional rights, ADA obligations, and Title IV-E requirements.

4. Order Respondents to provide immediate, full ADA accommodations in all further proceedings.

5. Award compensatory and punitive damages for Petitioner's civil-rights and ADA injuries.

6. Issue subpoenas under Fed. R. Civ. P. 27 and 34 for all records necessary to adjudicate these claims.

7. Award False Claims Act damages, treble damages, and statutory penalties, and enforce appropriate whistleblower protections.

8. Grant any other relief the Court deems just and proper.

## XIX.CONCLUSION

For the foregoing reasons, Petitioner respectfully asks this Court to grant the emergency writ of habeas corpus and such other relief as may be necessary to protect her fundamental rights and reunify her with her children.

## XX. SEALED RESPONDENTS AND PROTECTED PARTY INFORMATION

The following individuals and officials are not named in the public caption due to ongoing criminal investigations, federal whistleblower protections, or security risks. These parties are subject to sealed Rule 45 subpoenas and emergency relief requests. They are critical actors in the alleged constitutional violations:

1. Charles Etheredge – Former spouse of Petitioner; U.S. Navy retiree; subject to valid protective orders; currently under federal criminal investigation for alleged involvement in trafficking and concealment of minors. Identified as a co-conspirator in fraudulent DSS filings and custody-order manipulation; involvement currently under seal pending criminal investigation; disclosure to remain restricted.

2. Scott Wheeler – Father of the minor children; alleged to have coordinated concealment and obstruction of valid custody and protective orders; under sealed inquiry by federal authorities.

3. Kelly Wheeler – Step-mother of the minor children; alleged to have acted in coordination with others to traffic and conceal minors in violation of state and federal law.

4. Melissa Anderson – Clerk of Court for Chesapeake City; alleged to have intentionally destroyed valid custody filings and withheld critical court records from Petitioner.

5. Jodi Twiford – Clerk of Court for Currituck County; involved in preparing and filing fraudulent custody petitions under color of state law, leading to void orders.

6. Jeff Cruden – District Attorney (Navy-linked) with jurisdiction over Currituck County; refused to act on Petitioner's whistleblower disclosures regarding DSS fraud and child trafficking, despite statutory obligations under CAPTA and VAWA.

7. Currituck County Sheriff's Office – Local law-enforcement agency that failed to enforce valid custody and protective orders and ignored Petitioner's complaints, contributing to unlawful retention of minors.

8. Justice Allison Riggs – Acting Justice of the North Carolina Supreme Court; improperly denied Petitioner's pro se emergency filings and habeas petitions, raising questions about her swearing-in process, judicial impartiality, and potential conflicts of interest.

11. Emily Beebe – Designated Power of Attorney and guardian of Lily Etheredge; submitted reports to the Medina Police Department regarding child trafficking by an unlicensed social worker; her identity and communications are protected under victim-witness confidentiality statutes.

## XXI. SEALED EVIDENTIARY REPORT FOR DOJ, FBI, AND U.S. ATTORNEY REVIEW

### 1. Destruction of Protective and Custody Orders

a. Melissa Anderson (Chesapeake Clerk of Court) and Jodi Twiford (Currituck Court Clerk) intentionally destroyed or concealed registered custody filings from Virginia, resulting in void records and hampering enforcement of valid orders.

b. The absence of those records directly facilitated the unauthorized seizure and interstate concealment of Petitioner's minor children, in violation of the Full Faith and Credit Clause (U.S. Const. art. IV, § 1) and 18 U.S.C. § 2265 (VAWA interstate enforcement).

### 2. Fraudulent Filings and Judicial Forgery

a. Currituck County DSS caseworkers, in concert with unlicensed social workers, drafted and submitted fabricated "emergency" child-welfare petitions to Currituck magistrates before any lawful jurisdictional prerequisites had been met (UCCJEA §§ 201–204; N.C. Gen. Stat. § 50A-212; Va. Code § 20-159).

b. Court clerks (Melissa Anderson, Jodi Twiford) affixed forged signatures on those petitions—purporting to be from a licensed petitioner or guardian ad litem—constituting judicial forgery under 18 U.S.C. § 514 and state forgery statutes.

c. Those fabricated filings were used to procure removal warrants in both North Carolina and Virginia, depriving Petitioner of due process (14th Amend.) and interfering with interstate custody rights (UCCJEA).

### 3. Suppression and Destruction of Exculpatory Evidence

a. DSS agents and court personnel (Currituck DSS, Chesapeake DSS) concealed or destroyed key exculpatory audio recordings (Ex. D) demonstrating no abuse or neglect, violating 18 U.S.C. § 1512(b)(1) (tampering with evidence) and Brady v. Maryland, 373 U.S. 83 (1963) disclosure requirements.

b. Court-appointed Guardian ad Litem affidavits and licensed-therapist reports (Ex. F) were suppressed, in violation of Petitioner's Sixth and Fourteenth Amendment rights to present witnesses and evidence.

### 4. ADA Accommodation Denials and Court Access Violations

a. Despite clear notice of Petitioner's disabilities, Respondents (Currituck DSS, Chesapeake DSS, Chesapeake and Currituck clerks, presiding judges) refused reasonable modifications (48 C.F.R. § 37.101; 28 C.F.R. § 35.130) such as extended hearing timelines, real-time captioning, and accessible notice formats.

b. Those denials violated 42 U.S.C. § 12132 (Title II ADA) and 29 U.S.C. § 794 (Rehabilitation Act), and prevented Petitioner from participating meaningfully in removal and custody hearings (Ex. H).

### 5. Breaches of Sealed Identity and Privacy Protections

a. Respondents (Currituck DSS, Chesapeake DSS, Virginia Beach DSS) repeatedly circulated Petitioner's sealed identity in DSS case files, law-enforcement reports, and foster-care communications, violating 18 U.S.C. § 2721 et seq. (Driver's Privacy Protection Act) and 4th Amendment privacy rights.

b. Disclosure of Petitioner's sealed name contravened FRCP 5.2(d) and SCOTUS Rule 34.6, exposing her to safety risks and chilling her access to courts.

### 6. Passenger Trafficking and Child Trafficking Violations

a. Currituck DSS and Chesapeake DSS knowingly placed Petitioner's children in foster homes without lawful orders, then facilitated their transport across state lines, implicating 18 U.S.C. §§ 1591–1594 (sex trafficking) and 18 U.S.C. § 2423 (transportation for illegal sexual activity), given evidence of DSS-orchestrated transport to states lacking jurisdiction.

b. Co-conspirators (Charles Etheredge, Scott Wheeler, Kelly Wheeler, Brandon Etheredge) coordinated to traffic minors through unlicensed placements, violating 18 U.S.C. § 1594 (conspiracy to commit trafficking).

### 7. False Claims and Federal Fund Misuse

a. NC DHHS and VA DHHS certified compliance with Title IV-E requirements to HHS, knowing that Petitioner had been denied due-process hearings—thereby submitting false statements material to federal disbursement, in violation of 31 U.S.C. § 3729(a)(1)(A)–(B).

b. Those false claims resulted in significant Title IV-E reimbursements to Currituck DSS, Chesapeake DSS, and Virginia Beach DSS, constituting FCA violations (treble damages and penalties under 31 U.S.C. §§ 3729–3733).

### 8. Retaliation Against Whistleblower Disclosures

a. Petitioner's communications to DOJ, FBI, NCIS, and her Navy command (Ex. G) triggered intensified removal efforts by Respondents, constituting prohibited retaliation under the Whistleblower Protection Act (5 U.S.C. § 2302(b)(8)) and 31 U.S.C. § 3730(h) (FCA anti-retaliation).

b. Jeff Cruden (Navy-linked DA) refused to investigate Petitioner's disclosures, in violation of 18 U.S.C. § 1519 (obstruction)—effectively shielding Respondents from scrutiny.

## 9. Obstruction of Justice and Conspiracy

a. Respondents, including judicial officers (Justice Allison Riggs, presiding judges in March 2024) and law-enforcement agencies (Currituck Sheriff's Office), conspired to deny Petitioner a meaningful hearing and obstruct federal and state investigations, violating 18 U.S.C. §§ 241 (conspiracy against rights) and 242 (deprivation of rights under color of law).

b. Jefferson Griffin's judicial-election-certification challenges (Ex. X) reveal potential irregularities in Justice Riggs's swearing-in, suggesting further malfeasance under 18 U.S.C. § 1001 (false statements in federal investigations) and 18 U.S.C. § 1341 (mail fraud).

## 10. Failure to Report Child Abuse (CAPTA Violations)

a. Respondents (Currituck DSS, Chesapeake DSS, Virginia Beach DSS) knowingly ignored credible reports of abuse and failed to notify appropriate federal and state authorities as required by CAPTA, 42 U.S.C. § 5106a.

b. By failing to report, Respondents violated 42 U.S.C. § 5116(a) (state plan requirements) and 42 U.S.C. § 5116e (survey and report requirements), contributing to ongoing endangerment.

## 11. Victim-Rights Violations

a. Despite Petitioner's status as a victim of stalking and domestic violence, DSS and judicial officers regularly denied her victim-impact statements and failed to provide statutorily required notice of proceedings under VAWA, 42 U.S.C. § 3796gg(b)(2)–(b)(3).

b. The denial of victim rights—particularly notifications and protections—violated 42 U.S.C. § 10607(e)(2) (VAWA's Crime Victims' Fund requirement) and state statutory mandates for victim notification.

## 12. Criminal Neglect and Misprision

a. Currituck County Sheriff's Office and Chesapeake City Police Department knowingly refused lawful orders to return Petitioner's children or enforce protective orders, amounting to willful neglect of duty under 18 U.S.C. § 4 (misprision of felony).

b. These failures allowed Respondents to continue trafficking minors and hinder federal investigations, warranting referral for criminal prosecution.

## XXII. CONCLUSION OF SEALED REPORT

The foregoing actions, supported by sworn affidavits, audio recordings, sealed transcripts (Exs. C(1)–C(4)), and other exhibits (Exs. A–H), collectively establish a pattern of egregious federal-law violations. Petitioner respectfully requests that the U.S. Department of Justice, acting through U.S. Attorney Pam Bondi, and the FBI, under Director Kash Patel, expedite investigation and prosecution of the sealed parties named above.

## XXIII. SEALED EVIDENTIARY REPORT FOR DOJ, FBI, AND U.S. ATTORNEY REVIEW

The following actions, supported by sworn affidavits, audio recordings, hearing transcripts, and scanned exhibits, are provided for confidential review by the U.S. Department of Justice, U.S. Attorney Pam Bondi, and FBI Director Kash Patel. These actions implicate federal violations under VAWA, the Civil Rights Act, the ADA, the False Claims Act, CAPTA, the UCCJEA, and criminal statutes under Title 18.

**1. Destruction of Protective and Custody Orders**

   a. Melissa Anderson (Chesapeake Clerk of Court) and Jodi Twiford (Currituck Court Clerk) intentionally destroyed or concealed valid protective and custody orders from Virginia, resulting in void records and hampering enforcement of those orders.

   b. This destruction enabled the unauthorized seizure and interstate concealment of Petitioner's minor children, in violation of the Full Faith and Credit Clause (U.S. Const. Art. IV, § 1) and 18 U.S.C. § 2265 (VAWA interstate enforcement).

**2. Fraudulent Filings and Judicial Forgery**

   a. Currituck County DSS and court clerks (Melissa Anderson, Jodi Twiford) filed fabricated "emergency" child-welfare petitions prior to any lawful petition filing, forging petitioner signatures and affidavits—conduct constituting forgery under 18 U.S.C. § 514.

   b. These ex parte orders and forged certifications created a false pretense of emergency removal, preventing Petitioner from receiving notice or exercising due process.

**3. Brady Violations and Denial of Due Process**

   a. Respondents systematically withheld exculpatory evidence—audio recordings and police reports proving Petitioner's innocence and valid custody—from the August 2023 and October 2023 hearings, violating Brady v. Maryland, 373 U.S. 83 (1963), and Petitioner's Fifth and Fourteenth Amendment due-process rights.

   b. ADA requests for remote access to hearings, sealed identity protections, and other protective accommodations were submitted in writing but ignored by Respondents, in violation of 42 U.S.C. § 12132 (ADA Title II) and 29 U.S.C. § 794 (Rehabilitation Act).

**4. Child Trafficking by Unlicensed Personnel**

   a. An unlicensed social worker employed by Chesapeake City DSS and Currituck County DSS facilitated the illegal transfer and concealment of minor Lily Etheredge across state lines, implicating 18 U.S.C. §§ 1591–1594 (sex trafficking) and § 2423 (transportation for illegal sexual activity), given evidence of unauthorized transport to jurisdictions lacking proper child-welfare jurisdiction.

   b. Guardian Emily Beebe, designated as Power of Attorney for Lily Etheredge, filed formal reports with the Medina Police Department documenting this illegal transfer and concealment.

**5. Retaliatory Filings and Misuse of Federal Funds**

   a. Following Petitioner's whistleblower disclosures to federal oversight bodies (DOJ, FBI, NCIS, Navy command), DSS offices and court officers submitted retaliatory filings—new petitions and custody motions—intended to punish Petitioner and prevent further reporting. These acts contravene 31 U.S.C. § 3730(h) (FCA anti-retaliation) and the Whistleblower Protection Act (5 U.S.C. § 2302(b)(8)).

   b. Respondents also misused Title IV-D, IV-E, and CAPTA funding by creating fraudulent cases and denying services to Petitioner and her children. This misuse violated 31 U.S.C. §§ 3729–3733 (False Claims Act) and state plan requirements under 42 U.S.C. § 5106a (CAPTA).

**6. Military and Judicial Conspiracy**

   a. Justice Allison Riggs, acting North Carolina Supreme Court Justice, improperly denied Petitioner's pro se emergency petitions without lawful cause. Her swearing-in process was challenged by Jefferson Griffin, indicating potential irregularities under 18 U.S.C. § 1001 (false statements) and state election laws.

   b. Charles Etheredge, retired U.S. Navy, used military connections to suppress investigations into DSS trafficking and judicial misconduct, ordering subordinates to ignore Petitioner's reports. These acts violate DoD Directive 6400.01 (Family Advocacy Program) and UCMJ Articles 92 (failure to obey order), 107 (false official statements), 133 (conduct unbecoming an officer), and 134 (general crimes).

## XXIV.CONCLUSION

The sealed evidence summarized above establishes a pattern of egregious federal-law violations, including obstruction of justice, child trafficking, official misconduct, and misuse of federal funds. Petitioner requests that DOJ and FBI investigators treat this report as an urgent referral for criminal investigation and that U.S. Attorney Pam Bondi and FBI Director Kash Patel take immediate action to protect the minor children and enforce federal law.

## XXV. MOTION FOR DOJ OVERSIGHT AND RULE 45 SUBPOENAS

**1. Relief Requested:**

Petitioner respectfully moves this Court to:

a. Direct the U.S. Department of Justice to initiate oversight of all Respondent DSS agencies, state-court actors, and ancillary parties identified herein for potential federal-law violations, including child trafficking, civil-rights deprivations, ADA noncompliance, and False Claims Act misconduct; and

b. Issue Rule 45 subpoenas for production of all records, communications, and evidence in the possession, custody, or control of specified third parties (state courts, DSS offices, NCIS, and other sealed-party entities) as detailed below.

**2. Jurisdiction and Authority**

a. This Court has authority to "issue any writ" necessary to effectuate its jurisdiction under 28 U.S.C. § 1651 (All Writs Act). In habeas corpus proceedings, it may "seal and order production of documents for in camera review." See 28 U.S.C. § 2243; Shillitani v. United States, 384 U.S. 364, 370–71 (1966).

b. Fed. R. Civ. P. 45 empowers this Court to direct a subpoena to any person or entity to produce documents or permit inspection "within 100 miles of where the person resides, is employed, or regularly transacts business." Fed. R. Civ. P. 45(a)(1)(C). Subpoenas may also command NVRA-protected records, sealed protective orders, and ADA-accommodation documentation when necessary to secure constitutional rights.

**3. Need for DOJ Oversight**

**a.** The record demonstrates systemic federal-law violations:

i. Destruction of protective and custody orders (18 U.S.C. § 2265; Full Faith and Credit Clause).

ii. Fraudulent DSS petitions and judicial forgery (18 U.S.C. §§ 514, 1341, 1343).

iii. Suppression of exculpatory evidence in violation of Brady v. Maryland (373 U.S. 83) and obstruction statutes (18 U.S.C. § 1512).

iv. Child trafficking by unlicensed personnel (18 U.S.C. §§ 1591–1594, 2423).

v. Misuse of federal Title IV-D, IV-E, and CAPTA funds (31 U.S.C. §§ 3729–3733; 42 U.S.C. § 5106a).

vi. ADA noncompliance (42 U.S.C. § 12132; 29 U.S.C. § 794).

vii. Retaliation against a whistleblower (31 U.S.C. § 3730(h); 5 U.S.C. § 2302(b)(8)).

b. Those violations span multiple jurisdictions and involve actors with military affiliations (UCMJ violations) and high-level judicial involvement (potential election-certification irregularities). Federal oversight is imperative to ensure impartial investigation and enforcement.

**4. Scope of Proposed DOJ Investigation**

**The DOJ should be directed to examine:**

a. Records destruction by Melissa Anderson (Chesapeake Clerk) and Jodi Twiford (Currituck Clerk) to determine violations of 18 U.S.C. §§ 2265, 1519, and state record-retention laws.

b. Forgery of DSS petitions and judicial certifications by Currituck DSS and Chesapeake DSS personnel, potentially violating 18 U.S.C. §§ 514, 1341, 1512.

c. Suppression of exculpatory audio and police recordings in Brady-mandated proceedings.

d. Child-trafficking activities executed by unlicensed social workers and co-conspirators (including Charles Etheredge and Kelly Wheeler), under 18 U.S.C. §§ 1591–1594 and 2423.

e. Retaliatory acts against Petitioner following whistleblower disclosures, in violation of 31 U.S.C. § 3730(h) and 5 U.S.C. § 2302(b)(8).

f. Misuse of Title IV-D, IV-E, and CAPTA funds, implicating 31 U.S.C. §§ 3729–3733 and 42 U.S.C. § 5106a.

g. ADA violations—refusal to provide reasonable accommodations—under 42 U.S.C. § 12132 and 29 U.S.C. § 794.

h. Obstruction and conspiracy by Justice Allison Riggs and associated judicial officers, potentially implicating 18 U.S.C. §§ 241, 242, 1001, 1341.

i. Military interference by Charles Etheredge, under UCMJ Articles 92, 107, 133, 134, and DoD Directive 6400.01 compliance failures.

**5. Rule 45 Subpoenas**

Petitioner requests issuance of the following subpoenas:

a. State Courts (Currituck County, Chesapeake City, Virginia Beach City): All sealed and unsealed hearing transcripts (including Aug 2023, Oct 2023, Dec 2023, Mar 2024), protected orders (A–H), clerk-filed petitions, electronically-stored communication logs, and internal memoranda.

b. DSS Offices (Currituck County DSS, Chesapeake City DSS, Virginia Beach City DSS, NC DHHS, VA DHHS): Complete case files for Petitioner's minors, including but not limited to removal petitions, placement records, ADA requests and denials, DSS-internal email threads, compliance certifications to federal agencies, and financial records showing Title IV-E/CAPTA draws.

   c. Naval Criminal Investigative Service (NCIS) and U.S. Navy Command: Any and all investigative files, reports, emails, and encrypted communications related to Petitioner's whistleblower disclosures and NCIS inquiries.

   d. Department of Justice (Civil Rights Division), FBI (Child Exploitation Section): Any referral memos, investigative reports, and inter-agency communications concerning Petitioner's case.

   e. Targeted Individuals (sealed): Emergency subpoenas to Charles Etheredge, Scott Wheeler, Kelly Wheeler, Brandon Etheredge, Emily Beebe, Jeffrey Cruden, and Justice Allison Riggs for all communications (email, text, instant messages), financial records, and logs of contact with DSS, state courts, and federal agencies from January 2023 to present.

## 6. Specificity and Relevance

Each subpoena is narrowly tailored to obtain evidence essential to adjudicate the merits of Petitioner's habeas, civil-rights, ADA, and FCA claims. Petitioner seeks only materials directly related to (a) removal proceedings, (b) suppression of evidence, (c) ADA accommodations, (d) federal-fund certifications, (e) whistleblower retaliation, and (f) military/judicial interference.

## 7. Procedural Considerations

   a. Subpoenas to state courts and DSS offices should be returnable at Petitioner's counsel's office within 30 days, with privileges and confidentiality terms explicitly honored for sealed materials.

   b. Because certain materials relate to ongoing criminal investigations or sealed protective orders, Petitioner requests that the Court grant in camera review before any public disclosure.

   c. Rule 45(b)(1) permits service by certified mail or by a designated process server for entities beyond the state.

## 8. DOJ Oversight Mechanism

   a. Upon issuance of this Order, the U.S. Attorney's Office for the District of Columbia should assign a designated prosecutor (or team) to coordinate with the Civil Rights Division and the FBI's Child Exploitation Section to open a formal investigation.

   b. DOJ oversight should include review of all Rule 45 returns, in camera as needed, and direction to federal agencies (HHS, NCIS) to preserve and provide responsive materials.

   c. The U.S. Attorney may convene Grand Jury proceedings to consider indictment of any individuals implicated in criminal violations.

9. Legal Basis for Federal Oversight

a. The Civil Rights Act (18 U.S.C. §§ 241–242) and VAWA (18 U.S.C. § 2261 et seq.) authorize federal prosecution when state actors conspire or act under color of state law to violate civil rights or commit interstate domestic violence offenses.

b. Under 31 U.S.C. §§ 3729–3733 (FCA), the Attorney General may investigate and litigate false-claims matters. Petitioner's evidence of Title IV-E and CAPTA funding misuse falls squarely within DOJ priority guidelines.

c. 18 U.S.C. § 1512(b) (tampering with evidence) and § 1519 (obstruction) authorize federal intervention when exculpatory evidence is suppressed.

d. 42 U.S.C. § 2000d-7 empowers the Attorney General to enforce Title VI and Title IX, and by extension ADA-related claims under Title II (42 U.S.C. § 12188).

e. 18 U.S.C. §§ 1591–1594 and § 2423 provide federal jurisdiction over child trafficking and interstate transportation for illicit purposes.

## 10. Emergency Nature of Relief

Petitioner's children remain unlawfully separated pending federal investigation. Each additional day of separation inflicts irreparable emotional harm. Likewise, each day in which federal-funded DSS activities continue without oversight compounds misuse of taxpayer dollars and endangers other at-risk children. Immediate DOJ oversight and issuance of Rule 45 subpoenas are therefore critical.

## 11. Consideration of Due Process for Third Parties

While third parties such as Melissa Anderson, Jodi Twiford, and Justice Allison Riggs maintain certain privileges, the compelling need to safeguard constitutional rights and enforce federal law outweighs potential privacy interests. Any legitimately protected information (e.g., sealed-identity materials) may be reviewed in camera or subject to a narrowly tailored protective order.

## 12. Conclusion and Prayer

Petitioner respectfully requests that this Court:

a. Order DOJ oversight of all implicated DSS agencies, state-court actors, and allied parties for potential federal criminal and civil violations;

b. Issue Rule 45 subpoenas as detailed in Paragraph 5, compelling production of all relevant documents, communications, recordings, and financial records;

c. Provide in camera review for any sealed or confidential materials; and

d. Grant any further relief deemed necessary to secure Petitioner's fundamental rights and facilitate full federal enforcement.

**e.** Immediate habeas corpus relief, declaratory judgments, injunctions against invalid orders, civil rights damages, ADA accommodations, FCA damages, whistleblower protections, DOJ oversight, and subpoenas.

**Respectfully submitted,**

/s/ *Christine Etheredge*

**Christine Etheredge**

**Relator/ Pro Se**

**Dated: JUNE 1, 2025**

**IX. CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2025, I electronically filed the foregoing Complaint with the Clerk of Court using the CM/ECF system, which will send electronic notification to all counsel of record.

/s/ *Christine Etheredge*

**Christine Etheredge**